# HUNT *v.* McCASLIN.

PATENTS; INTERFERENCES; BURDEN OF PROOF; REASONABLE DILIGENCE.

1. The burden of proof is upon the party who is the last to file his application in the Patent Office, and this status of the parties is not changed by the fact that the junior applicant may have obtained a patent.
2. Long delay in filing application for a patent after alleged conception of the invention casts a doubt upon the allegation of conception, but it may be shown by the circumstances to be not inconsistent with inventorship.
3. A contract between the parties whereby they agreed to transfer all inventions made by them to a certain company can have no bearing on the question as to which of these parties is the inventor of a certain machine, but bears only on the question of ownership of the invention; *distinguishing* Milton v. Kingsley, 7 App. D. C. 53.

No. 62. Patent Appeals. Submitted March 3, 1879. Decided April 6, 1897.

HEARING on an appeal from a decision of the Commissioner of Patents. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Wm. H. Doolittle* for the appellants.

*Messrs. Ewing, Whitman & Ewing* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding instituted in the Patent Office between the appellant, Charles W. Hunt, and the appellee, George W. McCaslin, with reference to an invention in the matter of endless-chain conveyers, which has been defined in the Patent Office in four different counts or statements, as follows:

" 1. In an endless-chain conveyer, the combination, with

the track, track-wheels and endless-chains, of gravity-buckets pivoted to the chains and provided with lips at the front and back ends that lap one over the other, and means for tilting the buckets in succession for discharging the contents, and additional means for tilting the buckets on their pivots and turning them over for the lips to lap in the position for being refilled, substantially as set forth.

"2. An endless-chain conveyer having a chain, with gravity-buckets suspended pivotally therein and provided each with a lip at each end, the lips on adjacent buckets overlapping as set forth, and means situated at the point where the buckets approach the descending track, for tilting the buckets, the construction and arrangement of said means being such that the overlapping of the lips thereon will be changed, substantially as specified.

"3. In an endless-chain conveyer, the combination with the track, track-wheels and endless chain, of the gravity-buckets suspended at intervals in the chain and provided with overlapping lips as described, and means substantially as described for preventing the collision of the loaded buckets when they pass from the lower track to the ascending track, substantially as set forth.

"4. In a conveyer, the combination with an endless track, the track-wheels thereon for carrying the chain, and the endless chain of gravity-buckets, pivotally suspended at equal intervals in the chain, and each provided with dumping-lugs, and lips, one at each end, the lip on the rear end of a bucket overlapping the lip on the front end of the following bucket when the buckets are moving along a horizontal track, and means substantially as described for tilting the buckets, and means for shifting the lap of said lids when the bucket moves on to the descending tracks, substantially as set forth."

For this invention a patent was issued to the appellee, George W. McCaslin, on August 22, 1893, in pursuance of an application filed by him on April 8, 1893. But there

was pending in the office at the time the application of the appellant Hunt, filed on September 10, 1892, for a patent substantially for the same invention, which for some reason was delayed in its progress through the Patent Office, so that the propriety for a declaration of interference between him and McCaslin did not become apparent until after the issue of the patent to the latter. Consequently the possession of a patent by the appellee does not operate in this case, as it does in most cases, to throw the burden of proof upon the applicant who would dispute it. On the contrary, as the appellant Hunt is the senior applicant, the burden of proof is upon his opponent as the junior applicant to sustain his right by a preponderance of testimony.

This rule was conceded and applied by the tribunals of the Patent Office, and upon the testimony in the case the decisions of all the tribunals in the office were in favor of the appellee McCaslin. The parties to the proceeding are not independent inventors, operating unknown to each other; nor was there any reduction of the invention to practice by either party before the filing of their applications for a patent. Each claims the invention as his own and to have disclosed it to the other; and, as stated by the Commissioner of Patents and by the other tribunals of the Patent Office, the question to be determined is not properly one of priority of invention, but rather one of originality.

Hunt, the senior party, in his preliminary statement alleges that he conceived the invention about October 1, 1888, and disclosed it to others on November 7, 1888, about which time he claims to have made and exhibited a sketch of it. McCaslin, the junior party, claims to have conceived the invention in August, 1886, to have disclosed it to others in the same month, and to have reduced it to practice in 1893.

The appellant and the appellee entered into business relations with each other some time during the summer of 1888, and they established a company, known as the Mc-

Caslin Machine Company, for the general purpose of exploiting devices of the general character of the device here in controversy, upon which it is conceded that the appellee McCaslin had theretofore been operating, and with which, it is equally conceded, the appellant up to that time was unacquainted. On October 27, 1888, which was soon after the formation of the company, the appellant and appellee and the other parties composing it entered into an agreement, which was reduced to writing in the following terms:

"We do hereby severally agree that, if we or either of us shall (during the time we shall be interested as stockholders, trustees, officers or employees of the McCaslin Machine Company) invent or discover any improvement upon or new method of making any machine or machinery relating to or to be used in making the chain conveyer now owned and used by said company, or any other machinery manufactured by said company, we will at once assign the invention and discovery and any application for patents and any patents issued thereon to said company."

It would seem that in making the chain conveyer referred to in this agreement, the McCaslin Company was operating under a patent issued to one William Grieser, of Chicago, on December 8, 1885, and which had been purchased by McCaslin for the benefit of the company upon the discovery by him that certain operations of his own in the premises had been anticipated by the Grieser patent, and also by a patent issued to one George Crehor, of St. Louis, on August 8, 1882. At the date of the agreement McCaslin was the owner of three patents of the character referred to therein, one issued on August 7, 1888, a second on August 20, 1888, and a third also on August 20, 1888; and these three he thereupon, in pursuance of the agreement, assigned to the company. Whether the assignment was an absolute assignment of all ownership in the patents, or was merely a license, is controverted in the record, but it is a question that seems to us to have no bearing upon the present controversy.

The appellant Hunt had been the recipient of numerous patents covering devices of a cognate character, although not precisely on the same lines as the devices of McCaslin. But ten patents, which were issued to him in the years 1890, 1891, and 1892, seem to have been deemed proper to be assigned under the contract to the McCaslin Company.

McCaslin went out of the company in May, 1891, in consequence, it would seem, of disagreements with Hunt in the management of the business. Subsequently to his withdrawal, on November 22, 1892, he received two other patents for devices in the same line of invention, one of which, bearing the Patent Office number of 486,809, plays an important part in the present controversy, and was for a device almost identical with that now in issue, the substantial difference being in this, that the patent of 1892 was for buckets with only one overlapping lip, while the device now in controversy contemplates two such lips, one on each side of the bucket.

Upon the theory that McCaslin had invented the device of the patent of November 22, 1892, during the time of his connection with the McCaslin Machine Company, and was therefore bound by his contract heretofore mentioned to assign it to that company, suit was instituted against him in the name of the company in the year 1893, in the Supreme Court of the State of New York, to compel the assignment by him of this patent to the company. McCaslin likewise instituted suit in the same court to vacate the assignment made by him of the previous patents. Some of the testimony and proceedings in these two causes have been imported into this interference proceeding.

Subsequently the parties came into the Patent Office with their respective applications, as heretofore stated, with the result that judgment of priority or of originality of invention of the present device was awarded by all the tribunals of the office to McCaslin.

It is quite apparent that the appellee McCaslin had been

working on the special line of invention to which the device in controversy belongs a considerable time before he met the appellant Hunt or had any transactions whatever with him. It is also equally apparent that Hunt, prior to his meeting with McCaslin, although he was quite an inventor and had, as he states, taken out about seventy or eighty patents, had no conception of the special line of device on which McCaslin was operating. In fact, Hunt claims to have made his alleged invention of the device in controversy in the course of his discussions with McCaslin and others held for the purpose of devising some remedy for the imperfections of the previously existing devices of McCaslin. While, therefore, the prior direction of McCaslin's mind gives plausibility to his story that he had conceived this present invention two years before his meeting with Hunt, the claim of the latter is weakened as well by his previous want of acquaintance with that line of invention as by his own contemporaneous and subsequent conduct. For his claim is supported only by his own testimony, practically uncorroborated, and by the production of a sketch which he claims to have made on November 7, 1888, in the note-book of a draftsman, one Howes, who was dead at the time the testimony was taken. But it is not entirely clear that this sketch shows the invention in question; and even if it did, it is not shown that it was intended for any such purpose as is now claimed for it. Hunt attached no importance to it at the time, and regarded the alleged invention as impracticable and useless. He states explicitly in his testimony that he knew of no occasion where such a conveyer as that which was represented in his sketch could have been used to advantage. And it is a curious fact that in his testimony given in the suit hereinbefore referred to of the *McCaslin Machine Company* v. *McCaslin,* in the Supreme Court of the State of New York, he stated that he had no specific recollection of any such sketch, and that the sketch was in fact introduced in evidence in that suit for the apparent purpose of invali-

dating McCaslin's claim to his patent of November 22, 1892, when the theory of the bill of complaint, as the court seems to have ruled and must necessarily have ruled, required the admission by the complainant in the case, which was represented by Hunt, that the defendant McCaslin was the true inventor of the devices the assignment of which was therein sought to be compelled. This course of action on the part of Hunt is not entirely consistent with the theory that he is the true inventor of the device now in controversy.

But neither is the appellee's case entirely satisfactory, nor is it entirely free from incongruity. The testimony on his behalf is abundant and clear that, in the year 1886, which was two years before his meeting with Hunt, he had the conception of the invention in question. This testimony, it is true, is not free from the suspicion of undue interest on the part of the principal witnesses in that regard for the appellee, who are his two brothers, and who testify that a model of the device was shown to them in 1886. But they seem to be men of good standing. Their testimony is not impugned, nor is their integrity questioned or their veracity impeached. It may be that the model shown to these witnesses in 1886 was not precisely of the device now in controversy; but the great preponderance of the testimony must be accepted as tending to establish the identity. We find no good reason to question the correctness of the conclusions of the Patent Office in that regard.

But a more serious difficulty in the way of the appellee is suggested by his unexplained delay in applying for a patent for this device. As already stated, he had taken out various other patents for similar devices on the same precise line of invention, the last of them, the patent of November 22, 1892, differing from that now before us in having only one overlapping lip instead of two, as in this device; and yet the application for a patent for this device, which is now claimed to be the most successful and satisfactory of all the appellee's devices, was delayed for nearly seven years after

the date of conception. It is true, however, that there is testimony tending to show that he placed the matter in the hands of his patent solicitor in the year 1888, and also testimony tending to show that he brought it to the notice of Hunt during the continuance of their business relations in the McCaslin Machine Company, and that he failed to press its use in consequence of the assumed antagonism of Hunt, who was desirous, as McCaslin claimed, to introduce his own devices alone.

Under these circumstances, therefore, and notwithstanding the delay of McCaslin in his application for a patent for this device, we cannot regard the very just criticism of the Supreme Court of the United States in the case of *James* v. *Campbell*, 104 U. S. 356, with reference to a somewhat similar delay, as applicable to the present case. The circumstances of that case were very different from those involved in this case. There the purpose of the device or devices sought to be patented, which were stamp-canceling machines, rendered it imperative that the most complete conception should be brought forward as speedily as possible. In view of the nature and character of the testimony in the present case, we cannot hold that the appellee's delay in seeking a patent was wholly inconsistent with the theory of invention at the time when conception is claimed to have been had.

But there is another question raised by the appellant which claims our consideration. It is argued that in consequence of the contract existing between the parties who entered into the McCaslin Machine Company, and the confidential relations between them thereby established, the principle of the case of *Milton* v. *Kingsley*, 7 App. D. C. 531, is here applicable. This is a misapprehension of the decision in that case. That decision was simply an application of the well-known rule of agency, *qui facit per alia facit per se*—he who acts by another acts for himself—and of the almost equally well-known rule of the patent law, that an

inventor, employing another person to make improvements for him in the line of suggestions communicated by the employer, is entitled to the benefit of any inventions made in that line by the employee in the course of his employment. Milton had communicated his ideas to Kingsley. A partnership had been established between them, whereby Kingsley had undertaken to exploit and reduce into practice the invention of Milton. While so engaged, he made an improvement, as he claimed, although the claim was not established, upon Milton's ideas. We held in that case that, under the circumstances, even if Kingsley were the true inventor in good faith of the alleged improvement, it was only a reduction to practice of Milton's ideas and resulted to the benefit of Milton. We fail to see wherein that conclusion applies to the present controversy.

If the decision in the case of *Milton* v. *Kingsley* were applicable at all to the present case, it would more appropriately be to cause the improvements assumed to have been made by Hunt, in consequence of the confidential relations established between him and McCaslin, to redound to the benefit of McCaslin, to whom, beyond all question, belonged the original idea upon which the improvement was based. But we do not regard the case as applicable at all. If it could be justly claimed to be in any proper sense applicable, it would be only for the benefit of the McCaslin Machine Company, and not of Hunt; and then it would be only for the purpose of the virtual enforcement of an assignment of a patent. But this court, sitting upon appeal from the decisions of the Commissioner of Patents, cannot be called upon to enforce assignments. That is the province of a court of equity. Moreover, the agreement in question plainly contemplates that the parties may act independently, may elaborate their own ideas in their own way, and procure patents for them, if they are patentable, in their own names; and it is only when the patents have been so procured that the rights of the company under the contract could arise

to enforce compliance therewith by an assignment of such patents.

On the whole, while the case does not seem to us to be entirely free from doubt in the particulars which we have indicated, we find no good or sufficient reason to disturb the conclusions reached by the tribunals of the Patent Office. We are of opinion, therefore, that the decision of the Commissioner of Patents should be *affirmed.*　*The clerk of this court will certify this opinion and the proceedings in the cause to the Commissioner of Patents, to be entered of record in his office, according to law; and it is so ordered.*